**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**WANDA THOMPSON, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED**                                                       **PLAINTIFF**

**VS.**                                             **CIVIL ACTION NO. 1:10CV312-A-D**

**MIDLAND FUNDING, LLC**                                           **DEFENDANT**

**DEFENDANT MIDLAND FUNDING, LLC'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS ACTION**

**I.**      **INTRODUCTION**

When she entered the Loan Agreement that gave rise to this lawsuit, Wanda Thompson also signed an Arbitration Rider in which she knowingly and expressly agreed to arbitrate "any claim, dispute, or controversy . . . arising from or relating to [the Loan] Agreement or the relationships which result from [the Loan] Agreement." Thompson defaulted on the Loan Agreement. She then decided not to honor the Arbitration Rider either; instead, she filed a putative class action lawsuit alleging that Midland's attempts to collect her unpaid debt violated FDCPA. These are precisely the claims that Thomson agreed to arbitrate, and she should be compelled to do so.[1]

---

[1] In this lawsuit, Plaintiff contends, among other things, that Midland violated the FDCPA by filing affidavits in state court collection actions that were false or misleading because the affiants did not have personal knowledge of the information to which they attested. *See* Complaint, ¶¶ 19, 50. There are currently a number of pending class action lawsuits against Midland which contain identical allegations. On February 10, 2010, Midland reached an agreement in principle with the plaintiff in the first-filed case, *Brent v. Midland Credit Management, Inc et. al*, Northern District of Ohio Case No. 3:08-cv-01434, to settle these "false affidavit" claims on a nationwide basis. The parties have agreed to seek preliminary approval on or before March 3, 2011. Midland anticipates that the settlement, when approved, will bar Thompson's "false affidavit" claims to the extent she seeks to assert them on behalf of a class.

None of Thompson's attempts to avoid her agreement to arbitrate have any merit. First, Thompson argues that Midland does not have standing to enforce the Arbitration Rider because it was not one of the original parties to the Agreement. But Thompson does not dispute – nor can she – that her original creditor, Beneficial, assigned all of its rights under the Loan Agreement to Midland. The Loan Agreement incorporates the Arbitration Rider by reference, and the package of rights that Midland obtained when the Loan Agreement was assigned unquestionably includes the right to enforce the Arbitration Rider. And even if Midland had not acquired the right to arbitrate by assignment it would not matter: the Arbitration Rider expressly requires arbitration of all claims, including third party claims, "arising from or relating to" the Loan Agreement or the "relationships which result from" the Loan Agreement. The law is clear that when an arbitration agreement contains this language, it can be enforced by a third party so long as the claim is within the scope of the agreement – which Thompson's claims here clearly are.

Second, Thompson claims that Midland waived the right to enforce the Arbitration Rider by filing a state court collection action against her. Again, Thompson's argument completely misses the mark. In order to establish waiver by litigation, the party resisting arbitration must show that the opposing party litigated the <u>same issues</u> that it now seeks to arbitrate. Here, none of the issues raised in the instant lawsuit were ever litigated in the state court collection action. Moreover, to establish waiver, the party resisting arbitration must also show that she was prejudiced by being forced to litigate the claim that the opposing party now seeks to arbitrate. Thompson has never been forced to litigate her FDCPA claims; as the Court is aware, Midland moved to compel arbitration immediately and before any litigation on the merits of Thompson's claims.

Finally, and almost as an afterthought, Thompson asserts that the Arbitration Rider is unconscionable. It is not. This is not a case where the arbitration agreement was buried in fine print in the middle of a long agreement, written in indecipherable legalese, or mailed to the consumer with a set of terms and conditions long after the loan was made. To the contrary, the Arbitration Rider that Thompson signed was a separate document, in plain English and 12-point type. And right above the signature line, the Arbitration Rider stated, in bold capital letters: **THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION.** *See* Declaration of Kathy Rogan in support of Motion to Compel Arbitration ("Rogan Decl."), Ex. C. On these facts, Thompson cannot credibly claim that she did not know about the arbitration agreement or understand what it meant.

Nor is the Arbitration Rider oppressive or one-sided. It provides for the parties to split the costs of arbitration, it does not limit the claims Thompson can assert or the remedies available to her, and it mandates that any arbitration hearing will take place in a city near Thompson's residence. In sum, there is absolutely no evidence of unconscionability here. Accordingly, since Thompson has put forth no valid reason for allowing her to avoid her agreement to arbitrate, the Court should compel the arbitration of all of Thompson's claims pursuant to 9 U.S.C. § 4 and either dismiss her complaint with prejudice or stay this action pending arbitration.

II.  **MIDLAND HAS STANDING TO ENFORCE THE ARBITRATION RIDER**

A.  **Midland Has The Right To Enforce The Arbitration Rider Because It Was Assigned All Of Beneficial's Rights Under The Loan Agreement**

Thompson's assertion that Midland has no standing to enforce the Arbitration Rider because it was not a party to the original Loan Agreement completely overlooks the fact that Thompson's original creditor, Beneficial, assigned all rights in the Loan Agreement—including the right to enforce the Arbitration Rider—to Midland. *See* Rogan Decl., Ex. D. Indeed, the Bill of Sale between Beneficial and Midland clearly states: "Seller [Beneficial] hereby sells, assigns, and transfers to Purchaser [Midland], its successors and assigns, all of Seller's rights, title, and interest in each and every one of the Accounts." *Id.,* Ex. D.

Because Beneficial assigned all of its rights to Midland, Midland "stands in the shoes" of Beneficial and now has all of the rights Beneficial originally had under the Loan Agreement, including the right to enforce the Arbitration Rider. *See Stringer v. GMAC Financial Services Corp.*, No. 2:10CV34KS-MTP, 2010 WL 1257835, at *2 (S.D. Miss. Mar. 26, 2010) (holding that assignee "stands in the shoes" of the assignor and takes whatever rights the assignor possessed, including the right to arbitrate) (citing *S. Miss. Planning & Dev. Dist. v. Alfa Gen. Ins. Corp.,* 790 So. 2d 818, 821 (Miss. 2001)); *Green Tree Servicing LLC v. Stephens*, No. CIV 1:07CV1103-HSOJM, 2008 WL 1925174, at *3 (S.D. Miss. Apr. 29, 2008) ("GreenPoint subsequently assigned the Agreement to Plaintiff Green Tree, which assumed all rights and interests in the Agreement, including the arbitration provision"); *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 659 (S.D. Miss. 2000) (granting motion to compel arbitration of borrower's harassment claim against loan servicer, where the loan agreement that required arbitration was assigned from the original creditor to the servicer); *see also Price v. Taylor*, 575 F. Supp. 2d 845, 850-855 (N.D. Ohio 2008) (compelling the arbitration of claims

asserted against the subsequent purchaser of a loan, pursuant to arbitration agreement in original loan contract).

Thompson asserts that these cases are "completely distinguishable" because they do not involve "third party debt collectors." Opposition at pp. 4-5. But all of these cases stand squarely for the proposition that an assignee – like Midland – can enforce an arbitration provision in the assigned contract. Thompson cites no authority for her apparent belief that there is some exception to this rule for "third party debt collectors" and Midland is not aware of any such exception.

> **B. Thompson Must Arbitrate Her FDCPA Claims Because She Agreed To Arbitrate Any Claims Arising From The Loan Agreement Or The Relationships Which Result From The Loan Agreement**

Even if Beneficial had not assigned all of its rights under the Loan Agreement to Midland, Midland would still be entitled to enforce the Arbitration Rider because the Arbitration Rider expressly encompasses all claims, including third party claims, "arising from or relating to" the Loan Agreement or the "relationships which result from" the Loan Agreement. Rogan Decl., Exh. C. Thompson's claims that Midland violated the FDCPA when it sued her to collect the unpaid balance of the Loan Agreement relate to the Loan Agreement, and her relationship with Midland arose from the Loan Agreement. Accordingly, her claims fall squarely within this provision.

*Sherer v. Green Tree Servicing LLC*, 548 F.3d 379 (5th Cir. 2008) (*per curiam*) is virtually on all fours with this case and mandates that Thompson arbitrate her claims against Midland. In *Sherer*, the plaintiff signed a promissory note in connection with the purchase of a mobile home that included an arbitration clause. The arbitration clause – like the one at issue here – required arbitration of all claims "relating to this Agreement or the relationships which

result from this Agreement." *Id*. at 380. Green Tree acquired the servicing rights to the loan, and the plaintiff eventually sued Green Tree under the FDCPA for charging an improper prepayment penalty. *Id*. at 380-81. Green Tree moved to compel arbitration, and the plaintiff argued that Green Tree did not have the right to enforce the arbitration agreement because it was not an original signatory to the agreement. *Id*. at 381. The district court denied the motion and the Fifth Circuit reversed, holding that because Green Tree's relationship with the plaintiff resulted from the loan agreement, the plaintiff was required to arbitrate his claims against Green Tree. *Id.* at 382. A number of other cases have reached the same result. *See, e.g., Smith v. EquiFirst Corp.*, 117 F. Supp. 2d 557, 566 (S.D. Miss. 2000) (requiring borrower to arbitrate RESPA claims against mortgage broker, even though broker was not a party to the arbitration agreement, because the arbitration agreement required arbitration of "any claim . . .that my arise out of or … relationships which result from" borrower's loan application); *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1311-12 (11th Cir. 2005) (finding that purchaser of lender's assets could invoke arbitration clause in promissory note executed in favor of lender by borrower, because agreement required arbitration of "[a]ll . . . claims . . . arising from or relating to this contract or the relationships which result from this contract").

Thompson claims that the Loan Agreement is ambiguous "because it makes no mention of debt collectors" and does not expressly state that she is giving up the right to bring lawsuits involving "old, uncollectible debts." Opposition, pp. 6-7. However, the breadth and scope of the Arbitration Rider is crystal clear, and Thompson has cited to no case law – and Midland is not aware of any – holding that all of the potential parties and all of the potential claims that might be the subject of litigation need to be specifically enumerated in order for an arbitration agreement to be enforceable.

### III. MIDLAND DID NOT WAIVE ITS RIGHT TO ARBITRATE THOMPSON'S FDCPA CLAIMS BY FILING A COLLECTION LAWSUIT

Equally unavailing is Thompson's claim that Midland waived its right to compel arbitration of Thompson's FDCPA claim by filing a state court collection action against her. "[A] party alleging waiver of arbitration must carry a heavy burden." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999). In the Federal Arbitration Act, Congress signaled a "federal policy favoring arbitration," and thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d. Cir. 1997) (finding no waiver of arbitration in "view of the strong federal policy of enforcing agreements to resolve disputes through arbitration").[2] In order to prove waiver, the moving party must show that the non-moving party 1) substantially invoked the judicial process, 2) to the detriment or prejudice of the moving party. *Subway*, 169 F.3d at 327, 329. Thompson can show neither of these elements.

Midland did not waive its right to arbitrate by invoking the judicial process because it has never invoked the judicial process with respect to the claims Thompson asserts in this lawsuit. The collection action was a <u>different</u> lawsuit involving <u>different</u> claims. It is well-settled that, for the purposes of determining whether a party has waived the right to arbitrate by invoking the judicial process, "a party <u>only</u> invokes the judicial process to the extent it <u>litigates a specific claim it subsequently seeks to arbitrate</u>." *Subway*, 169 F.3d at 328 (finding no waiver of

---

[2] The cases cited by Thompson are in accord. *See, e.g., Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577-578 (5th Cir. 1991) (holding that "actions in federal court were not so substantial as to mandate that we overcome the legal presumption that parties who contracted for arbitration should be allowed to arbitrate").

arbitration clause where plaintiff previously sued on unrelated claims) (emphasis added); *see also Doctor's Assocs.*, 107 F.3d at 133-34 ("only prior litigation of the <u>same legal and factual issues</u> as those the party now wants to arbitrate results in waiver of the right to arbitrate") (emphasis added).[3]

Consistent with this rule, courts have specifically held that a creditor's initiation of a debt collection action <u>does not waive</u> that creditor's right to compel arbitration of FDCPA claims. *See, e.g., Fields v. Howe*, No. IP-01-1036-C-B/S, 2002 WL 418011, at *7 (S.D. Ind. Mar. 14, 2002) (holding that Discover, by initiating a collection action against the cardholder in state court, did not waive its right to arbitrate a FDCPA claim subsequently brought by the cardholder in federal court as the claim was not "one and the same").[4] This makes sense because a debt claim is distinct from a FDCPA claim: "The former centers on evidence regarding the existence of a contract, the failure to perform on a contract, or other circumstances leading to the creation of a valid debt. The latter centers on evidence regarding the improprieties and transgressions, as defined by the FDCPA, in the procedures used to collect the debt, regardless of the debt's

---

[3] The cases cited by Thompson do not compel a different conclusion. Both *Republic Ins. Co.* and *Petroleum Pipe* found waiver only because the claim litigated was the same as the claim being arbitrated, which is not the case here. *See Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d 341, 344-46 (5th Cir. 2004) (finding that plaintiff conducted extensive prior litigation contesting all of the issues present in this case, "including the issues which it now seeks to arbitrate."); *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 481 (5th Cir. 2009) (the defendant invoked its settlement agreement's arbitration clause only after it had engaged in substantial litigation on claims arising under the settlement agreement).

[4] The *Fields* court also noted that, even if the cases were one and the same, arbitration would still be permitted because the parties' arbitration agreement contained a "no waiver" clause. *Fields*, 2002 WL 418011 at *7. The Arbitration Rider here similarly mandates that "[t]he use of the courts shall not constitute a waiver of the right of any party . . . to submit any Claim to arbitration nor render inapplicable the compulsory arbitration provisions . . . ." Rogan Decl., Exh. C.

validity." *Hurtado v. TAM Fin. Corp.*, No. EP-07-CA-065-FM, 2007 WL 1746884, at *2 (W.D. Tex. June 5, 2007).

For the same reason that Thompson cannot show that Midland invoked the judicial process with respect to her FDCPA claims, she cannot show prejudice. Prejudice refers to the "inherent unfairness-in terms of delay, expense, or damage to a party's legal position-that occurs when the party's opponent forces it to litigate an issue <u>and later seeks to arbitrate that same issue</u>." *Subway*, 169 F.3d at 327 (emphasis added). Here, Thompson has obviously not been prejudiced because her FDCPA claims have never been litigated to any extent in any forum. Accordingly, the Court should reject Thompson's waiver argument and compel her to arbitrate her claims.

**IV.    THE LOAN AGREEMENT AND ARBITRATION RIDER ARE NOT UNCONSCIONABLE**

Finally, Thompson has not shown – and cannot show – that the Arbitration Rider is unconscionable. There is "nothing per se unconscionable about arbitration agreements." *People's Choice Home Loan, Inc. v. Price*, No. 4:05CV58-D-B, 2006 WL 516833, at *5 (N.D. Miss Mar. 2, 2006); *Fidelity Nat'l Corp. v. Blakely*, 305 F. Supp. 2d 639, 643 (S.D. Miss. 2003) (same). To prevail on this argument, Thompson must prove that the Arbitration Rider is unconscionable under Mississippi law, and in Mississippi a contract is only unconscionable if it is one that "no man in his senses and not under a delusion would make on the one hand, and no honest and fair man would accept on the other." *First Family Fin. Servs., Inc. v. Sanford*, 203 F. Supp. 2d 662, 665 (N.D. Miss. 2002).

There are two types of unconscionability: procedural and substantive. *First Family*, 203 F. Supp. 2d at 665. A party may establish procedural unconscionability by proving "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language,

disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Id*. at 665-666. A party may prove substantive unconscionability by showing that the terms of the arbitration clause were oppressive. *Id.* at 666. Neither type of unconscionability is present here.

### A. The Arbitration Rider Is Not Procedurally Unconscionable

The Arbitration Rider is far from being procedurally unconscionable. Thompson does not even attempt to argue that she did not know about or understand the Arbitration Rider, nor can she. The arbitration provision was not buried in the middle of a contract, but rather was a separate document, which Thompson signed, that had the words 'ARBITRATION RIDER' at the top of the page in bold print. Rogan Decl., Ex. C; *see First Family*, 203 F. Supp. 2d at 666 (arbitration agreement was not procedurally unconscionable where it "was not buried in fine print in the middle of the contract, but rather was a separate document, with the words 'ARBITRATION AGREEMENT' placed at the top of the page in large, bold letters that are easy to see"); *Smith v. EquiFirst Corp*., 117 F. Supp. 2d 557, 564-65 (S.D. Miss. 2000) (no procedural unconscionability where the arbitration agreement was set forth in a separate document which was plainly described as an arbitration rider in large, easy-to-read print).

Additionally, the entire Arbitration Rider is in plain English and 12-point type. Rogan Decl., Ex. C. And right above Thompson's signature, the agreement states, in bold, all-capital print: **THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION.** *Id.*, Ex. C. On these facts, Thompson cannot credibly claim that she did not know about the arbitration agreement, or that she did not understand that signing the Arbitration Rider meant that she would

not have the right to litigate in court. *First Family*, 203 F. Supp. 2d at 666 (no procedural unconscionability where arbitration agreement was in written in plain English and signed by the party opposing arbitration, and where right above the signature was an express warning that by signing the agreement, the parties were giving up the right to maintain a court action).

Thompson argues that the Arbitration Rider is procedurally unconscionable because the Loan Agreement was an adhesion contract, and she had no bargaining power. However, the mere fact that a contract is one of adhesion does not make it unconscionable. *Norwest Fin. Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1194 (Miss. 2005) (an "arbitration agreement may not be labeled unconscionable simply because it carries with it aspects of adhesion.") (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 716 (Miss. 2002)). Likewise, an imbalance in the relative sophistication of the parties will not render the agreement unenforceable. *See First Family*, 203 F. Supp. 2d at 666-67 (rejecting argument that when two parties possess unequal bargaining power, the arbitration agreement is void); *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 179 (2006) ("This Court could hardly employ a rule which required the parties to every contract to be of exactly equal sophistication.").

In fact, "[c]ourts will generally enforce an arbitration agreement in a contract of adhesion unless the agreement is 1) not within the objectively reasonable expectations of the parties, or 2) unconscionably unfair." *Norwest*, 905 So. 2d at 1194 (citing *Russell v. Performance Toyota, Inc.,* 826 So. 2d 719, 726 (Miss. 2002)). Possibly attempting to satisfy this standard, Thompson claims that she did not know that by signing the Arbitration Rider, she would be giving up the right to sue a debt collector in court for FDCPA violations. As a preliminary matter, there is no evidence that this is even true, since Thompson did not submit an affidavit or anything else that would evidence her understanding of the Arbitration Rider. *See MS Credit Center*, 926 So. 2d at

179 (rejecting argument that disparity in sophistication and bargaining power rendered arbitration agreement unconscionable in part because the plaintiff submitted no sworn testimony, evidence, or affidavits in support of the argument).

More importantly, however, the Arbitration Rider clearly states that all claims, including third party claims, "relating to the [Loan] Agreement or the relationships that result from" the Loan Agreement are subject to arbitration. Even if Thompson did not understand that this language included the specific claims she wants to litigate now, there is no requirement that an arbitration provision specifically list every potential claim that might fall within its scope in order to be enforceable. *MS Credit Center*, 926 So. 2d at 177 (rejecting plaintiff's argument that she did not understand legal effect of arbitration agreement, and explaining that "this Court has never held that one party to an arm's-length contract has an inherent duty to explain its terms to the other. Duties to disclose or to act affirmatively, such as explaining the terms of a contract, do not arise in arm's length transactions or under an ordinary standard of care.").

> B. **The Loan Agreement and Its Arbitration Rider are Not Substantively Unconscionable**

An arbitration agreement is substantively unconscionable if its terms are oppressive. *First Family*, 203 F. Supp.2d at 666. Here, nothing in the Arbitration Rider is oppressive. To the contrary, it does not limit Thompson's remedies, it provides that the parties will split the cost of arbitration, and it allows Thompson to arbitrate in a city near her home. Rogan Decl., Exh. C. Further, the Arbitration Rider equally binds both Thompson and Midland to arbitration upon election by either party. There is no disparity in either party's ability to arbitrate any issue, and both parties are guaranteed the same rights by the agreement. *See People's Choice Home Loan*, 2006 WL 516833 at *5 (no substantive unconscionability where both parties were guaranteed the

same rights under the agreement). Thompson, therefore, cannot credibly claim that any of the terms of the Arbitration Rider are oppressive.[5]

Thompson's sole argument on substantive unconscionability is that if she is forced to arbitrate, she will not be able to sue Midland in court for alleged FDCPA violations. In other words, she is arguing that the Arbitration Rider is oppressive <u>solely because it requires arbitration</u>. This argument flies in the face of longstanding and well-settled case law holding that public policy <u>favors</u> arbitration, and that therefore arbitration provisions are <u>not</u> inherently unfair or oppressive. *See, e.g.*, *Smith,* 117 F. Supp. 2d at 564 (noting that "there is nothing inherently unfair or oppressive about arbitration clauses"); *Fidelity Nat. Corp.*, 305 F. Supp. 2d at 643 (S.D. (agreement to arbitrate is not inherently unconscionable); *People's Choice*, 2006 WL 516833 at *5 ("There is nothing per se unconscionable about arbitration agreements."). Accordingly, Thompson's unconscionability arguments must be rejected, and she should be compelled to arbitrate her claims.

---

[5] The arbitration provision does prevent Thompson from arbitrating on behalf of a class; however, such provisions are fully enforceable under Mississippi law. *See, e.g., Anglin v. Tower Loan of Miss., Inc.*, 635 F. Supp. 2d 523, 528-29 (S.D. Miss. 2009) (finding class action waiver in arbitration agreement executed by borrower in connection with loan from lender enforceable) (citing *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 878 (11th Cir. 2005); *Sims v. Unicor Mortgage*, No. CIV.A. 4:98CV25-D-B, 1998 WL 34016832, at *3 (N.D. Miss. Apr. 27, 1998) (provision in arbitration agreement prohibiting class claims does not violate public policy because there is "no public policy favoring class actions"); *Steed v. Sanderson Farms, Inc.*, No. CIVA205CV02146KSMTP, 2006 WL 2844546, at *10 (S.D. Miss. Sept. 29, 2006) (finding class action waiver in arbitration agreement enforceable and not unconscionable: "courts generally uphold waivers of class actions in arbitration agreements, even in the context of an adhesion contract and even where the right to proceed by class action derives from statute"). Moreover, the class action waiver provision cannot be found unconscionable under Mississippi law inasmuch as "Mississippi does not even allow the use of the class action device in its courts." *Anglin*, 635 F. Supp. 2d at 530 (citing Mississippi law).

## V. CONCLUSION

For the foregoing reasons, Midland respectfully requests that this Court issue an order compelling Thompson to arbitrate all of the claims asserted in her Complaint and dismissing this case with prejudice. In the alternative, Midland requests that this Court stay Thompson's claims until the completion of arbitration.

Respectfully submitted this the 24th day of February, 2011.

        MIDLAND FUNDING, LLC


BY:   <u>s/ Jonathan P. Dyal</u>
        Of Counsel

RICHARD L. STONE (CA Bar No. 110022)
AMY M. GALLEGOS (CA Bar No. 211379)
BETY JAVIDZAD (CA Bar No. 240598)
Admitted *Pro Hac Vice*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

JONATHAN P. DYAL (MS Bar No. 99146)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Richard T. Phillips, Esq.
flip@smithphillips.com

Jason L. Nabors, Esq.
jason@smithphillips.com

I hereby certify that a true and correct copy of the foregoing pleading was mailed to the following individuals who are not currently on the CM/ECF system:

T.W. Pace, Esq.
Pace Law Firm
P. O. Box 23
Amory, MS 38821

s/ Jonathan P. Dyal<br>
Of Counsel